## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
APR 3 0 2004
KENNETH S. GARDNER, CLERK
PS REP. - MM

| | | |
|---|---|---|
| In re: | ) | Case No. 04-B-05548 |
| | ) | |
| SAGE ENTERPRISES, INC., | ) | Chapter 7 |
| | ) | Hon. Susan Pierson Sonderby |
| Debtor. | ) | Hearing date:  May 18, 2004 |
| | ) | Hearing time:  10:30 a.m. |

### NOTICE OF (I) ENTRY OF AGREED INTERIM ORDER MODIFYING AUTOMATIC STAY TO PERMIT LASALLE BANK TO SET OFF MONEY IN THE BLOCKED ACCOUNT AND DIRECTING THE TRUSTEE TO TURN OVER CASH COLLATERAL AND AUTHORIZING TRUSTEE'S LIMITED USE OF CASH COLLATERAL AND (II) NOTICE OF HEARING ON ENTRY OF AGREED FINAL ORDER

TO:  SEE ATTACHED SERVICE LIST

**PLEASE TAKE NOTICE** that on April 29, 2004, the Court granted the Agreed Interim Order Modifying Automatic Stay to Permit LaSalle Bank National Association ("LaSalle Bank") to Set Off Money in the Blocked Account and Directing the Trustee to Turn Over Cash Collateral and Authorizing Trustee's Limited Use of Cash Collateral (the "Interim Order") a copy of which is attached hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that a hearing pursuant to the Federal Rule of Bankruptcy Procedure 4001 to consider entry of a final order, in the proposed Agreed Final Order Modifying Automatic Stay to Permit LaSalle Bank to Set Off Money in the Blocked Account and Directing Trustee to Turn Over Cash Collateral and Authorizing Trustee's Limited Use of Cash Collateral (the "Final Order"), a copy of which is attached hereto as Exhibit B, along with a blackline comparing the proposed Final Order to the Interim Order, a copy of which is attached hereto as Exhibit C, will be held on **Tuesday, May 18, 2004**, at **10:30 a.m.** at the following location:

CH01/ 12359248.1

United States Bankruptcy Court
Everett McKinley Dirksen Building
Courtroom: 642
219 South Dearborn Street
Chicago, IL 60604

Objections to the proposed Final Order should be in writing, filed with court, and served

upon the following parties at the addresses listed below:

| | |
|---|---|
| Susan Barnes de Resendiz | Richard S. Lauter |
| Mark S. Melickian | Holland & Knight Llc |
| Gardner Carton & Douglas LLP | 131 S. Dearborn |
| 191 N. Wacker Drive | 30th Floor |
| Suite 3700 | Chicago, IL 60603 |
| Chicago, IL 60606 | |

Gretchen Silver
Office of the US Trustee
227 W Monroe St
Suite 3350
Chicago, IL 60606

Dated: April 30, 2004
       Chicago, Illinois

LASALLE BANK NATIONAL ASSOCIATION

By: _____
       One of its Attorneys

Susan Barnes de Resendiz (# 90785380)
Mark S. Melickian (# 6229843)
Jason J. Goitia (# 90785765)
**GARDNER CARTON & DOUGLAS LLP**
191 North Wacker Dr.
Suite 3700
Chicago, IL 60606
Tel: (312) 569-1000
Fax: (312) 569-3000
E-mail: sderesendiz@gcd.com
       mmelickian@gcd.com
       jgoitia@gcd.com

## CERTIFICATE OF SERVICE

I, Bertha Serrano, a non-attorney in the law firm of Gardner Carton & Douglas LLP, certify that I caused the foregoing **Notice of (I) Entry of Agreed Interim Order Modifying Automatic Stay to Permit LaSalle Bank to Set Off Money in the Blocked Account And Directing the Trustee to Turn Over Cash Collateral and Permitting the Trustee's Limited Use of Cash Collateral and (II) Notice of Hearing on Entry of Agreed Final Order**, to be served on the parties listed on the attached service list via first-class U.S. mail, postage-prepaid on this 30th day of April, 2004.

Bertha Serrano

Subscribed and Sworn to Before Me
this 30th day of April, 2004.

Notary Public

My commission expires:   MAY 17, 2006

OFFICIAL SEAL
N PAUL COYLE
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXP. MAY 17,2006

CH01/ 12359248.1                    3

# EXHIBIT A

# EXHIBIT A

Budget

106 {CH02/ 22308092.2 }

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                              )
                                    )   Case No.  04 B 05548
SAGE ENTERPRISES, INC.,             )
                                    )   (Chapter 7)
                    Debtor.         )
                                    )   Hon. Susan Pierson Sonderby

### CASH COLLATERAL BUDGET

| ESTIMATED COSTS AND EXPENSES | | |
|---|---|---|
| | Trustee | Trustee's Counsel |
| Sale of Inventory | 2,000 | 10,000 |
| Collection of Accounts Receivable | 3,000 | 35,000 |
| Site Evaluation/Inspection/Clean-up | 5,000 | 0 |
| Liquidation of Equipment | 3,000 | 5,000 |
| Records Review/Section 341 Meeting | 2,000 | 3,000 |
| Administration of Estate/Insurance/Utilities | 10,000 | 5,000 |
| Miscellaneous | 2,000 | 5,000 |
| Claims | 3,000 | 7,000 |
| **TOTAL** | $30,000 | $70,000 |

# 1894878_v1

Document comparison done by DeltaView on Friday, April 30, 2004 10:25:25 AM

| Input: | |
|---|---|
| Document 1 | PowerDocs://CH02/22308092/2 |
| Document 2 | PowerDocs://CH02/22308092/3 |
| Rendering set | GCD Options |

| Legend: | |
|---|---|
| [Insertion ] | |
| {Deletion } | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 50 |
| Deletions | 56 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 106 |

## SAGE ENTERPRISES, INC.
### SERVICE LIST
### Case No. 04 B 5548

Harvey Alpert
Harvey Alpert & Co.
2014 S. Sepulveda Blvd.
Los Angeles, CA 90025
Ph: (310) 689-6000 x106
Fax (310) 689-6009
halpert@harveyalpertco.com

Dave Baddelcy
Mother Parker's Tea & Coffee Inc.
2530 Stanfield Rd.
Mississauga, Ont. L4Y 1S4
CANADA
Ph: (905) 279-9100
Fax: (905) 279-9863
dbaddeley@mother-parkers.com

Richard S. Lauter
Sara E. Lorber
Holland & Knight LLC
131 S. Dearborn, 30th Floor
Chicago, IL 60603
Ph: (312) 263-3600
Fax: (312) 578-6666
*Attorneys for Horace Fox, Chapter 7
Trustee*

Richard M. Bendix
Christopher M. Cahill
Martin W. Salzman
Schwartz, Cooper, Greenberg, Krauss, Chtd.
180 N. LaSalle Street, Suite 2700
Chicago, IL 60601
Ph: (312) 346-1300
Ph: (312) 845-5443
Fax: (312) 264-2418
rbendix@scgk.com
*Counsel for Sage Enterprises, Inc.*

William A. Brandt, Jr.
George Shoup
Pat O'Malley
Development Specialists, Inc.
70 W. Madision Street, Suite 2300
Chicago, IL 60602
Ph: (312) 263-4141
Fax: (312) 263-1180
bbrandt@dsi.biz
gshoup@dsi.biz
pomalley@dsi.biz

Graham Felton
D&F Marketing
3405 Lynburn Drive
Tucker, GA, 30084
Ph: (770) 493-8608 x309
Fax: (770) 493-6163
gfelton@dfminc.biz

Peter Filippelli
Elis Finest Chccsecake
6701 West Forest Prcserve Drive
Chicago, IL 60634
Ph: (773) 736-3417
Fax: (773) 205-3801
pfilippc@clicheesecake.com

Gretchen Silver
Office of the U.S. Trustee, Region 11
227 W. Monroe St., Suite 3350
Chicago, IL 60606
Ph: (312) 866-7480
Fax: (312) 866-5794

Stacy Gallant
Greenberg Traurig
The Forum
3290 Northside Parkway, Suite 400
Atlanta, GA  30327
Ph: (678) 553-2100
Fax: (678) 553-2212
gallants@gtlaw.com
*Counsel for Woodsmoke Provisions*

Michael L. Gesas
Gesas, Pilati, Gesas & Golin
53 West Jackson Blvd., Suite 528
Chicago, IL  60604
Ph: (312) 726-3100
Fax: (312) 939-1742
mgcsas@gpgglaw.com

Robert C. Glenn
Frito-Lay, Inc.
5080 Spectrum Drive
Addison, TX  75001
Ph: (972) 334-7000
Fax: (972) 376-7237

Global Inflights Products
8918 152nd Avenue NE
Redmond, WA  98052
Ph: (425) 558-2778
Fax: (425) 885-1219

GNS Foods, Inc.
2109 East Division
Arlington, TX  76011
Ph: (817) 469-7420
Fax: (817) 795-4673

Jeremy Himmelfarb
Inter Ocean Food Products
7901 Oceano Avenue
Jessup, MD  20794
Ph: (410) 799-3700
Fax: (410) 799-8080

John Horsfall & Sons Ltd.
West Vale Works
Greetland, Halifax
West Yorkshire HX4 8BB
UNITED KINGDOM
Ph: 011 (44) 1422-372237
Fax: 011 (44) 1422-310105

Michael Kanan
King Nut Companies
31900 Solon Road
Solon, OH  44139
Ph: (440) 248-8484 x255
Fax: (440) 248-0153
mikekanan@kingnut.com

Jerry L. Knecht
Michael Foods, Inc.
301 Carlson Parkway, Suite 400
Minnetonka, MN  55305
Ph: (952) 258-4766
Fax: (952) 258-4710
jerry.knecht@michaelfoods.com

Koch Poultry CO Inc
4404 West Berteau Avenue
Chicago, IL  60641
Ph: (773) 286-4343
Fax: (773) 286-8952

Y. Tristan Kuo
Cuisine Solutions Inc.
85 S. Bragg Street, Suite 600
Alexandria, VA  22312
Ph: (703) 270-2965
Fax: (703) 343-4162
ytkuo@cuisinesolutions.com

Daniel J. Lett
Bunzl USA, Inc.
701 Emerson Road, Suite 500
St. Louis, MO 63141
Dir: (314) 997-5959 x328
Fax: (314) 817-1548
dan.lett@bunzlusa.com

John Lewis, Jr., Esq.
The Coca-Cola Company
One Coca-Cola Plaza
NAT 2006
Atlanta, GA 30313
Ph: (404) 676-4016
Fax: (404) 598-4016
johnlewis@na.ko.com
*Counsel for Coca-Cola North America;*
*Minute Maid; and CCDA Waters, L.L.C.*

Michael Lewis Company
c/o Shelly Rosen, CFO
201 Mittel Drive
Wood Dale, IL 60191
Ph: (630) 350-1060
Fax: (630) 350-1089

Sean D. Malloy
McDonald Hopkins Co., LPA
2100 Bank One Center
600 Superior Ave., East
Cleveland, OH 44114
Ph: (216) 348-5436
Fax: (216) 348-5474
smalloy@mcdonaldhopkins.com

Margaret Mann
Chad Fuller
4350 La Jolla Village Dr., 7th Floor
San Diego, CA 92122-1246
Ph: (858) 450-8400
Fax: (858) 450-8499
mmann@hewm.com
cfuller@hewm.com
*Counsel for Gourmet Company, Inc.*

Curtis Marshall
Sara Lee Foods U.S.
10151 Carver Road
Cincinnati, OH 45252
Ph: (513) 936-2417
Fax: (513) 936-2480
curtis.marshall@saralee.com

Mike McGuire
McGuire & Associates
465 Green Street
San Francisco, CA 94133
Ph: (415) 677-0931
Fax: (415) 986-7718
mmcguire@mcguireandassoc.com
*Counsel for Gourmet Center*

Juan Mostek
Kellogg Company
One Hollow Tree Lane
Elmhurst, IL 60126
Ph: (630) 833-2900
Fax: (630) 833-3009
juan.mostek@kellogg.com

Brian Northrop
General Mills Finance Inc.
One General Mills Blvd.
Minneapolis, MN 55426
Ph: (763) 764-89109
Fax: (763) 765-8228
brian.northrop@genmills.com

Kenneth J. Ottaviano
Daniel M. Entsminger
Katten Muchin Zavis Rosenman
525 W. Monroe St., Suite 1600
Chicago, IL 60661-3693
Ph: (312) 902-5200
Fax: (312) 902-1061
*Counsel for Michael Lewis Company*

Betsy Paul, CCE
International Multi Foods
P.O. Box 59062
Minneapolis, MN 55459
Off: (800) 866-3300 ext. 7511
Dir: (952) 404-7511
Fax: (952) 404-7510
bpaul@multifoods.com

David Pilat
Quaker Oats
555 W. Monroe St., 03-03
Chicago, IL 60618
Ph: (312) 821-1000
Fax: (312) 821-1772

Rick Roller
Sage Enterprises, Inc.
999 East Touhy
Des Plaines, IL 60018
Ph: (847) 827-0066 x338
Fax: (847) 827-4056
rroller@sageent.com

Ken Samara
A la Carte Marketing Services, Inc.
2807 Allen Street, No. 819
Dallas, TX 75204
Ph: (214) 720-1498
Fax: (214) 720-1499
alacarteks@aol.com
*Counsel for Cape Cod Potato Chip
Company*

John B. Sanfilippo and Son
2299 Busse Road
Elk Grove Village, IL 60007
Ph: (847) 593-2300
Fax: (847) 593-9608

Quincy Sinkler
Frito Lay Customer Financial Services
Suite 4E-045
5080 Spectrum Drive
Addison, TX 75001
Ph: (972) 376-7567
Fax: (972) 376-7237
quincy.m.sinkler@fritolay.com

Stefano Foods Inc.
4825 Hovis Road
Charlotte, NC 28208
Ph: (704) 399-3935
Fax: (704) 399-3930

Michael D. Warner
Warner, Stevens & Doby, L.L.P.
1700 City Center Tower II
301 Commerce Street
Fort Worth, TX 76102
Ph: (817) 810-5250
Fax: (817) 810-5255
mwarner@wsdlaw.com

Michael Weininger
Weinberg Richmond LLP
333 W. Wacker Dr., Suite 1800
Chicago, IL 60606
Ph: (312) 807-3800
Fax: (312) 807-3903
mweininger@wr-llp.com
*Counsel for CenterPoint Realty
Management Corp.*

Matthew T. Gensburg
Greenberg Traurig LLP
77 West Wacker Drive
Suite 2500
Chicago, IL 60601
Ph: (312) 456-8400
*Attorney for Gourmet Company, Inc.*

Lesley C. Ardemagni
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, TX 75201-2980
Ph: (214) 953-6500
Fax: (214) 662-4462
Lesley.ardemagni@bakerbotts.com
*Counsel for AMB-SGP TX/IL*

Custom Food Products
Attn: Jeffry F. Kohlhoff
3152 Boxwood Circle
Thousand Oaks, CA 91360
Ph: (805) 493-2012
Fax: (805) 493-2602

Crowns Credit Co.
44 S. Washington St.
New Bremen, OH 45869
Ph: (419) 629-2311
Fax: (419) 629-9224

Canon Financial Services, Inc.
Attn: Debbie Sweeney
200 Commerce Square Blvd.
Burlington, NJ 08016
Ph: (856) 813-1000
Fax: (856) 813-5122

Raymond Leasing Corp
Attn: Scott Barth
20 S. Canal St.
Greene, NY 13778
Ph: (607) 656-2311
Fax: (607) 656-2186

ICX Corp.
2 Summit Park Dr.
Cleveland, OH 44131
Ph: (216) 328-8700
Fax: (216) 328-8710

Tennant Financial Services
4333 Edgewood Rd N E
Cedar Rapids, IA 52441
Ph: (800) 535-1480
Fax: (319) 841-6408

# EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 02-B-05548 |
| | ) | |
| SAGE ENTERPRISES, INC., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Susan Pierson Sonderby |

AGREED INTERIM ORDER MODIFYING
AUTOMATIC STAY TO PERMIT LASALLE BANK
TO SET OFF MONEY IN THE BLOCKED ACCOUNT
AND DIRECTING TRUSTEE TO TURN OVER CASH COLLATERAL
AND AUTHORIZING TRUSTEE'S LIMITED USE OF CASH COLLATERAL

Upon consideration of the Unopposed Motion of LaSalle Bank National

Association ("LaSalle Bank") for Limited Modification of the Automatic Stay to Set off Money

in the Blocked Account and for an Interim Order Directing the Trustee to Turn Over Cash

Collateral and Permitting the Trustee's Limited Use of Cash Collateral (the "Motion"); and upon

reviewing the affidavit submitted in support of the Motion and considering the arguments of

counsel and parties and any opposition thereto; and the Court being otherwise fully advised;

IT IS ORDERED AS FOLLOWS:

1.    The Trustee and LaSalle Bank hereby consent and stipulate to the entry of this

interim order (the "Interim Order"). [1]

2.    For purposes of this Interim Order, the term "Cash Collateral" shall mean and

include all cash collateral as defined by Section 363(a) of the Bankruptcy Code in which LaSalle

Bank holds valid and perfected first priority liens and security interests, including, but not

limited to, the collateral and cash arising from the collection or other conversion of such

---

[1] Words used herein, whether capitalized or not, shall be construed in accordance with the definitions provided and set forth in the Motion and the Amended and Restated Loan and Security Agreement (the "Loan Agreement"), dated July 22, 1996, as supplemented by the definitions set forth in the Bankruptcy Code, including, without limitation, the definitions contained in Section 101 of the Bankruptcy Code.

collateral or cash to other assets of the Debtor's estate whether such liens or security interests

existed on the Involuntary Petition Date or arise thereafter pursuant to the terms of this Interim

Order and whether such assets that have been converted to cash existed as of the Involuntary

Petition Date or arose or were generated thereafter.

      3.     Except to the extent provided to the contrary herein, the terms and conditions of

the Loan Agreement are incorporated herein and made a part hereof by this reference and

hereafter shall be deemed and held to be enforceable against the Debtor.

      4.     Without prejudice of the rights of any third party to object to the validity, extent,

priority and/or enforceability of any lien held by LaSalle Bank, the Trustee and LaSalle Bank

hereby stipulate and represent to the Court that, except to the extent provided to the contrary

herein: (a) the Loan Agreement evidences and governs the debt owed as of the Involuntary

Petition Date to LaSalle Bank, including principal and interest accrued on the prepetition

indebtedness and the fees, costs, and expenses of the counsel to LaSalle Bank (the "Prepetition

Debt"); (b) as of the Involuntary Petition Date, the Debtor is liable to pay the Prepetition Debt,

and the Prepetition Debt shall be an Allowed Claim in an amount not less than $3,686,956.43;

(c) the Prepetition Debt constitutes the legal, valid, and biding obligations of the Debtor,

enforceable in accordance with the terms of the Loan Agreement; (d) no offsets, defenses, or

counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to

avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(e) the prepetition liens, among other things, secure payment of all of the Prepetition Debt and

postpetition interest; and (f) the prepetition liens are valid, enforceable, duly perfected,

first-priority liens upon and security interests in the Collateral.

5.    All agreements, security interests, mortgages, and liens contemplated by this Interim Order are effective and perfected without further filing by LaSalle Bank or compliance with state or federal law.  LaSalle Bank will not be required to file financing statements or other documents in any jurisdiction or to take any other action in order to perfect the security interests and liens granted to it under and pursuant to this Interim Order.

6.    Notwithstanding anything in this Interim Order to the contrary, this Interim Order is entered without prejudice to the rights, remedies and priorities, if any, held by third parties under the Agricultural Commodities Act of 1930 as amended [7 U.S.C. § 499 *et seq.*] ("PACA"), the Packers and Stockyard Act of 1921 [7 U.S.C. §§ 181-229] ("Stockyard"), or the reclamation rights, if any, of third parties pursuant to Commercial Code Section 2702 and/or any other applicable state or common law rights to the extent such rights are superior or senior to the lien in the Inventory asserted by LaSalle Bank.

7.    Subject to the limitations in Section 6, and on a provisional basis pending entry of a final order authorizing the use of cash collateral and allowing set off (the "Final Order"), the automatic stay imposed by 11 U.S.C. § 362 is modified to allow LaSalle Bank to set off $555,121.08 held in the Blocked Account (defined below) against LaSalle Bank's claim of not less than $3,686,956.43 against Sage Enterprises, Inc. (the "Debtor").

8.    The Trustee is hereby authorized to use Cash Collateral, in an aggregate amount not to exceed $100,000, in accordance with the Budget appended hereto as Exhibit A and made a part of this Interim Order, pursuant to the terms and conditions set forth herein and solely to the extent the Trustee chooses to use Cash Collateral hereunder.  The Cash Collateral used by the Trustee pursuant to this Interim Order shall be used only for the purposes and up to the amounts listed in such Budget unless LaSalle gives its prior written consent; provided further that the

-3-

Trustee's use of Cash Collateral is conditioned on the Trustee's timely collection of the Debtor's accounts and, unless LaSalle's provides prior written consent, the amount used for any line item in the Budget does not exceed 5% of the amount shown in the Budget.

9.    The Trustee agrees, and is hereby ordered and directed, to maintain the Blocked Account (provided that the Trustee uses such account solely for deposits and not for payment of creditors other than LaSalle Bank) and pay all proceeds of LaSalle's Bank's collateral into the Blocked Account.  Immediately upon entry of this Interim Order, the Trustee shall account to LaSalle Bank for all cash, checks, notes, drafts, instruments, acceptances, or other property representing cash or other proceeds of the pre- and postpetition collateral in the Trustee's possession or control.  On a provisional basis pending entry of a Final Order, LaSalle Bank is authorized to apply the funds deposited into the Blocked Account to the indebtedness due from the Debtor to LaSalle Bank.  The Trustee shall establish and maintain the bank account for the Debtor's chapter 7 estate at LaSalle Bank.

10.    Upon entry of a Final Order, pursuant to Sections 361(3) and 507(b) of the Bankruptcy Code, LaSalle Bank is granted additional adequate protection for the Trustee's use of Cash Collateral as provided for herein in the form of an allowed claim that shall have priority over all administrative expenses incurred in this Chapter 7 case of the kind specified in Sections 503(b) or 507(a) of the Bankruptcy Code.

11.    Upon entry of a Final Order, as partial adequate protection for the Secured Lenders' interest in the Cash Collateral, and to the extent, if any, that the liens granted in this paragraph are not encompassed within any liens granted pursuant to the Loan Agreement, LaSalle Bank is hereby granted, pursuant to 11 U.S.C. §§ 363(e) and 552(b), security interests in and liens upon all property of the Debtor, including the collateral described in the Loan

-4-

~~Agreement, which are acquired or created by the Debtor or any trustee after the commencement~~ of this case through the use of Cash Collateral (the "Replacement Liens"). The Replacement Liens are valid, attached, ~~choate,~~ enforceable, perfected, and continuing to the same extent as the ~~existing respective liens of LaSalle Bank~~

12.     On a provisional basis pending entry of a Final Order, all funds constituting Cash Collateral in the possession, custody, or control of the Debtor as of the Involuntary Petition Date are to be turned over to LaSalle Bank immediately upon entry of this Interim Order.  LaSalle Bank is provisionally authorized to apply the funds to the indebtedness due from the Debtor to LaSalle Bank.

13.     LaSalle Bank shall have reasonable access, during regular business hours and after reasonable notice, to the business premises in order to inspect financial records and to review and evaluate the physical condition of the inventory.

14.     The Trustee shall strictly account for all proceeds, products, or profits that come into the Debtor's or the Trustee's possession, custody, or control and shall furnish LaSalle Bank with such reports on a weekly basis.  The Trustee shall keep records which shall be of such character as will enable LaSalle Bank to determine at any time the status of the cash collateral together with the outstanding inventory and accounts receivable.

15.     The following shall be Events of Default under this Interim Order: (a) the use of Cash Collateral other than as allowed in the Budget attached to this Interim Order; (b) if LaSalle Bank reasonably believes that there is insufficient Collateral or proceeds of Collateral to pay the secured obligations in full or otherwise deems itself insecure; and (c) dismissal of the above-captioned case.

16.    Upon the occurrence of an Event of Default, LaSalle Bank may elect to notify the Trustee that he is no longer permitted to use Cash Collateral under this Interim Order (the "Notice of Default"). Upon the Trustee's receipt of the Notice of Default, and without further order of this Court, the Trustee's right to use Cash Collateral shall terminate on the second business day after the Trustee's receipt of the Notice of Default. Beginning on the second business date following the Trustee's receipt of the Notice of Default from LaSalle Bank, LaSalle Bank, in its sole and absolute discretion, may return checks presented against the Trustee's accounts and not permit any withdrawals without further order by this Court.

17.    The Trustee's authority to use Cash Collateral pursuant to this Interim Order shall terminate (the "Termination Date") upon an election by LaSalle Bank pursuant to paragraph 16, mutual agreement of the parties, the full satisfaction of LaSalle Bank's allowed claim, or an order of this Court.

18.    The Trustee acknowledges that his promises and actions contained herein are made of his own free will and volition. In accepting the Budget attached to this Interim Order and the projections prepared by the Trustee and by taking any other actions pursuant to this Interim Order, LaSalle Bank shall not have any liability to any third party. The Trustee acknowledges that he has chosen, of his own free and voluntary acts, his own legal counsel, financial advisors, and accountants, if any.

19.    LaSalle Bank shall be permitted to recover the fees, costs, and expenses of its counsel in connection with the Loan Agreement to the extent permitted under Section 506(b) of the Bankruptcy Code.

-6-

20.     The automatic stay imposed by Section 362 of the Bankruptcy Code is hereby modified with respect to LaSalle Bank to the extent necessary to effectuate the provisions of this Interim Order.

21.     This Interim Order shall not constitute a waiver by LaSalle Bank of any of its rights under the Loan Agreement, the Bankruptcy Code, or other applicable law, including, without limitation, its right to assert in the future that, notwithstanding the terms and provisions of this Interim Order, any of its interests in the pre- or postpetition collateral lack adequate protection within the meaning of Sections 362(d) or 363(e) of the Bankruptcy Code.

22.     LaSalle Bank's failure, at any time or times hereafter, to require strict performance by the Trustee (or any successor to the Trustee) of any provision of this Interim Order shall not waive, affect, or diminish any right of LaSalle Bank thereafter to demand strict compliance and performance herewith.  No delay on the part of LaSalle Bank in the exercise of any right or remedy shall constitute a waiver of any other right or remedy.

23.     Upon entry of a Final Order, this Interim Order shall be binding on all parties in interest in this bankruptcy case and their respective successors and assigns, including, without limitation, any trustee, except that any successor trustee shall have the right to terminate this Interim Order after notice and a hearing.  If a successor trustee terminates this Interim Order or if any or all of the provisions of this Interim Order are hereafter modified, vacated, or stayed by subsequent order, such action shall not affect the priority, validity, enforceability, or effectiveness of any lien, security interest, priority, or other benefit authorized hereby prior to the effective date of such subsequent order, and all such liens, security interests, priorities, and other benefits shall be governed in all respects by the original provisions of this Interim Order.

24.    Except as otherwise explicitly set forth in this Interim Order, no third parties are

intended to be or shall be deemed to be third party beneficiaries of this Interim Order.

25.    The ten day stay of effectiveness of this Interim Order under Fed. R. Bankr. P.

4001(a)(3) is waived.

26.    The Motion shall be entered and continued for a hearing before this Court on

entry of the Final Order on May 18, 2004 at 10:30 a.m.

Dated: April 29 2004

SO ORDERED:

_____

UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM AND SUBSTANCE:**

HORACE FOX, TRUSTEE

_____

LASALLE BANK NATIONAL ASSOCIATION

By: _____
      One of Its Attorneys

Susan Barnes de Resendiz
Mark S. Melickian
Jason J. Goitia
**GARDNER CARTON & DOUGLAS LLP**
191 North Wacker Drive, Ste. 3700
Chicago, IL  60606

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No.  04 B 05548 |
| SAGE ENTERPRISES, INC., | ) | |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| | ) | Hon. Susan Pierson Sonderby |

**EXHIBIT A TO
AGREED INTERIM ORDER
MODIFYING AUTOMATIC STAY TO PERMIT
LASALLE BANK TO SET OFF MONEY IN THE
BLOCKED ACCOUNT AND DIRECTING TRUSTEE TO
TURN OVER CASH COLLATERAL AND AUTHORIZING
TRUSTEE'S LIMITED USE OF CASH COLLATERAL**

| ESTIMATED COSTS AND EXPENSES | | |
|---|---|---|
| | Trustee | Trustee's Counsel |
| Sale of Inventory | 2,000 | 10,000 |
| Collection of Accounts Receivable | 3,000 | 35,000 |
| Site Evaluation/Inspection/Clean-up | 5,000 | 0 |
| Liquidation of Equipment | 3,000 | 5,000 |
| Records Review/Section 341 Meeting | 2,000 | 3,000 |
| Administration of Estate/Insurance/Utilities | 10,000 | 5,000 |
| Miscellaneous | 2,000 | 5,000 |
| Claims | 3,000 | 7,000 |
| **TOTAL** | $30,000 | $70,000 |

# EXHIBIT C

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Case No. 02-B-05548** |
| | ) | |
| **SAGE ENTERPRISES, INC.,** | ) | **Chapter 7** |
| | ) | |
| **Debtor.** | ) | **Hon. Susan Pierson Sonderby** |

**AGREED** [1]{~~[INTERIM]~~}[2][FINAL] **ORDER MODIFYING
AUTOMATIC STAY TO PERMIT LASALLE BANK TO
SET OFF MONEY IN THE BLOCKED ACCOUNT
AND DIRECTING TRUSTEE TO TURN OVER CASH COLLATERAL
AND  AUTHORIZING TRUSTEE'S LIMITED USE OF CASH COLLATERAL**

[3]{~~Upon consideration of~~}[4][LaSalle Bank National Association ("LaSalle Bank")

having brought] the Unopposed Motion of LaSalle Bank National Association[5]{ ~~("LaSalle~~

~~Bank")~~}  for Limited Modification of the Automatic Stay to Set off Money in the Blocked

Account and for an Interim Order Directing the Trustee to Turn Over Cash Collateral and

Permitting the Trustee's Limited Use of Cash Collateral (the "Motion"); and [6]{~~upon reviewing~~

~~the affidavit submitted in support of the Motion and considering the arguments of counsel and~~

~~parties and any opposition thereto~~}[7][hearings having been held on such Motion on April 28,

2004 and April 29, 2004, resulting in the entry on April 29, 2004, of the Agreed Interim Order

Modifying Automatic Stay to Permit LaSalle Bank to Set Off Money in the Blocked Account

and Directing Trustee to Turn Over Cash Collateral and Authorizing Trustee's Limited Use of

Cash Collateral (the "Interim Order"); and LaSalle being willing to continue to allow the Trustee

to use Cash Collateral only upon the terms and conditions set forth in the Loan Agreement[1][9][

and as set forth herein; and it appearing that entry of this order is in the best interests of the estate

---

[8][1]  Words used herein, whether capitalized or not, shall be construed in accordance with the definitions provided and
set forth in the Motion and the Amended and Restated Loan and Security Agreement (the "Loan Agreement"), dated July 22,
1996, as supplemented by the definitions set forth in the Bankruptcy Code, including, without limitation, the definitions
contained in Section 101 of the Bankruptcy Code._]

and that good and sufficient cause exists to enter this order]; and the Court being otherwise fully advised;

IT IS ORDERED AS FOLLOWS:

1.    The Trustee and LaSalle Bank hereby consent and stipulate to the entry of this [10]{interim} order (the "[11]{Interim}[12][Final] Order"). [13]{[4]}

2.    For purposes of this [15]{Interim}[16][Final] Order, the term "Cash Collateral" shall mean and include all cash collateral as defined by Section 363(a) of the Bankruptcy Code in which LaSalle Bank holds valid and perfected first priority liens and security interests, including, but not limited to, the collateral and cash arising from the collection or other conversion of such collateral or cash to other assets of the Debtor's estate whether such liens or security interests existed on  the Involuntary Petition Date or arise thereafter pursuant to the terms of this [17]{Interim}[18][Final] Order and whether such assets that have been converted to cash existed as of the Involuntary Petition Date or arose or were generated thereafter.

3.    Except to the extent provided to the contrary herein, the terms and conditions of the Loan Agreement are incorporated herein and made a part hereof by this reference and hereafter shall be deemed and held to be enforceable against the Debtor.

4.    Without prejudice of the rights of any third party to object to the validity, extent, priority and/or enforceability of any lien held by LaSalle Bank, the Trustee and LaSalle Bank hereby stipulate and represent to the Court that, except to the extent provided to the contrary herein: (a) the Loan Agreement evidences and governs the debt owed as of the Involuntary Petition Date to LaSalle Bank, including principal and interest accrued on the prepetition

[14]{[1 Words used herein, whether capitalized or not, shall be construed in accordance with the definitions provided and set forth in the Motion and the Amended and Restated Loan and Security Agreement (the "Loan Agreement"), dated July 22, 1996, as supplemented by the definitions set forth in the Bankruptcy Code, including, without limitation, the definitions contained in Section 101 of the Bankruptcy Code. ]}

indebtedness and the fees, costs, and expenses of the counsel to LaSalle Bank (the "Prepetition

Debt"); (b) as of the Involuntary Petition Date, the Debtor is liable to pay the Prepetition Debt,

and the Prepetition Debt shall be an Allowed Claim in an amount not less than $3,686,956.43;

(c) the Prepetition Debt constitutes the legal, valid, and biding obligations of the Debtor,

enforceable in accordance with the terms of the Loan Agreement; (d) no offsets, defenses, or

counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to

avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(e) the prepetition liens, among other things, secure payment of all of the Prepetition Debt and

postpetition interest; and (f) the prepetition liens are valid, enforceable, duly perfected,

first-priority liens upon and security interests in the Collateral.

     5.     All agreements, security interests, mortgages, and liens contemplated by this

[19]{Interim}[20][Final] Order are effective and perfected without further filing by LaSalle Bank or

compliance with state or federal law.  LaSalle Bank will not be required to file financing

statements or other documents in any jurisdiction or to take any other action in order to perfect

the security interests and liens granted to it under and pursuant to this [21]{Interim}[22][Final] Order.

     6.     Notwithstanding anything in this [23]{Interim}[24][Final] Order to the contrary, this

[25]{Interim}[26][Final] Order is entered without prejudice to the rights, remedies and priorities, if

any, held by third parties under the Agricultural Commodities Act of 1930 as amended [7 U.S.C.

§ 499 *et seq.*] ("PACA"), the Packers and Stockyard Act of 1921 [7 U.S.C. §§ 181-229]

("Stockyard"), or the reclamation rights, if any, of third parties pursuant to Commercial Code

Section 2702 and/or any other applicable state or common law rights to the extent such rights are

superior or senior to the lien [27]{in the Inventory }asserted by LaSalle Bank.

7.    Subject to the limitations in Section 6, [28]{and on a provisional basis pending entry of a final order authorizing the use of cash collateral and allowing set off (the "Final Order"), }the automatic stay imposed by 11 U.S.C. § 362 is modified to allow LaSalle Bank to set off $555,121.08 held in the Blocked Account (defined below) against LaSalle Bank's claim of not less than $3,686,956.43 against Sage Enterprises, Inc. (the "Debtor").

8.    The Trustee is hereby authorized to use Cash Collateral, in an aggregate amount not to exceed $100,000, in accordance with the Budget appended hereto as Exhibit A and made a part of this [29]{Interim}[30][Final] Order, pursuant to the terms and conditions set forth herein and solely to the extent the Trustee chooses to use Cash Collateral hereunder. The Cash Collateral used by the Trustee pursuant to this [31]{Interim}[32][Final] Order shall be used only for the purposes and up to the amounts listed in such Budget unless LaSalle gives its prior written consent; provided further that the Trustee's use of Cash Collateral is conditioned on the Trustee's timely collection of the Debtor's accounts and, unless LaSalle's provides prior written consent, the amount used for any line item in the Budget does not exceed 5% of the amount shown in the Budget.

9.    The Trustee agrees, and is hereby ordered and directed, to maintain the Blocked Account (provided that the Trustee uses such account solely for deposits and not for payment of creditors other than LaSalle Bank) and pay all proceeds of LaSalle's Bank's collateral into the Blocked Account. Immediately upon entry of this [33]{Interim}[34][Final] Order, the Trustee shall account to LaSalle Bank for all cash, checks, notes, drafts, instruments, acceptances, or other property representing cash or other proceeds of the pre- and postpetition collateral in the Trustee's possession or control. [35]{On a provisional basis pending entry of a Final Order, }LaSalle Bank is authorized to apply the funds deposited into the Blocked Account to the

indebtedness due from the Debtor to LaSalle Bank. The Trustee shall establish and maintain the bank account for the Debtor's chapter 7 estate [36]{at}[37][as] LaSalle Bank.

[38]{10.  [reserved]}

[39]{11.  [reserved] }

[40][10.   Pursuant to Sections 361(3) and 507(b) of the Bankruptcy Code, LaSalle Bank is granted additional adequate protection for the Trustee's use of Cash Collateral as provided for herein in the form of an allowed claim that shall have priority over all administrative expenses incurred in this Chapter 7 case of the kind specified in Sections 503(b) or 507(a) of the Bankruptcy Code.  As partial adequate protection for the Secured Lenders' interest in the Cash Collateral, and to the extent, if any, that the liens granted in this paragraph are not encompassed within any liens granted pursuant to the Loan Agreement, LaSalle Bank is hereby granted, pursuant to 11 U.S.C. §§ 363(e) and 552(b), security interests in and liens upon all property of the Debtor, including the collateral described in the Loan Agreement, which are acquired or created by the Debtor or any trustee after the commencement of this case through the use of Cash Collateral (the "Replacement Liens").  The Replacement Liens are valid, attached, choate, enforceable, perfected, and continuing to the same extent as the existing respective liens of LaSalle Bank.]

[41][11.   Except as otherwise agreed by LaSalle Bank in writing, the surcharge provisions of Section 506(c) of the Bankruptcy Code and the enhancement of collateral provisions of Section 552 of the Bankruptcy Code shall not be imposed on LaSalle Bank or any property that is subject to a prepetition or postpetition lien in favor of LaSalle Bank for the benefit of any party in interest in the case.]

12.      $^{42}${On a provisional basis pending entry of a Final Order, all}$^{43}$[All] funds constituting Cash Collateral in the possession, custody, or control of the Debtor as of the Involuntary Petition Date are to be turned over to LaSalle Bank immediately upon entry of this $^{44}${Interim}$^{45}$[Final] Order. LaSalle Bank is$^{46}${ provisionally} authorized to apply the funds to the indebtedness due from the Debtor to LaSalle Bank.

13.      LaSalle Bank shall have reasonable access, during regular business hours and after reasonable notice, to the business premises in order to inspect financial records and to review and evaluate the physical condition of the inventory.

14.      The Trustee shall strictly account for all proceeds, products, or profits that come into the Debtor's or the Trustee's possession, custody, or control and shall furnish LaSalle Bank with such reports on a weekly basis. The Trustee shall keep records which shall be of such character as will enable LaSalle Bank to determine at any time the status of the cash collateral together with the outstanding inventory and accounts receivable.

15.      The following shall be Events of Default under this $^{47}${Interim}$^{48}$[Final] Order: (a) the use of Cash Collateral other than as allowed in the Budget attached to this $^{49}${Interim}$^{50}$[Final] Order; (b) if LaSalle Bank reasonably believes that there is insufficient Collateral or proceeds of Collateral to pay the secured obligations in full or otherwise deems itself insecure; and (c) dismissal of the above-captioned case.

16.      Upon the occurrence of an Event of Default, LaSalle Bank may elect to notify the Trustee that he is no longer permitted to use Cash Collateral under this $^{51}${Interim}$^{52}$[Final] Order (the "Notice of Default"). Upon the Trustee's receipt of the Notice of Default, and without further order of this Court, the Trustee's right to use Cash Collateral shall terminate on the second business day after the Trustee's receipt of the Notice of Default. Beginning on the

second business date following the Trustee's receipt of the Notice of Default from LaSalle Bank, LaSalle Bank, in its sole and absolute discretion, may return checks presented against the Trustee's accounts and not permit any withdrawals without further order by this Court.

[53]{17.}[54][19.] The Trustee's authority to use Cash Collateral pursuant to this [55]{Interim}[56][Final] Order shall terminate (the "Termination Date") upon an election by LaSalle Bank pursuant to paragraph 16, mutual agreement of the parties, the full satisfaction of LaSalle Bank's allowed claim, or an order of this Court.

[57]{18.}[58][20.] The Trustee acknowledges that his promises and actions contained herein are made of his own free will and volition. In accepting the Budget attached to this [59]{Interim}[60][Final] Order and the projections prepared by the Trustee and by taking any other actions pursuant to this [61]{Interim}[62][Final] Order, LaSalle Bank shall not have any liability to any third party. The Trustee acknowledges that he has chosen, of his own free and voluntary acts, his own legal counsel, financial advisors, and accountants, if any.

[63]{19.}[64][21.] LaSalle Bank shall be permitted to recover the fees, costs, and expenses of its counsel in connection with the Loan Agreement to the extent permitted under Section 506(b) of the Bankruptcy Code.

[65][22. Nothing contained herein shall prohibit the Trustee and LaSalle Bank from amending the terms of the Trustee's use of Cash Collateral by mutual agreement without the necessity of obtaining Court approval, so long as such amendment does not alter the aggregate amount of the Cash Collateral used, security interests, or other adequate protection granted to LaSalle Bank herein or payments or deposits to be made hereunder or otherwise effect the statutory, common law, or other applicable rights, remedies, and priorities, if any, of third

parties. The Trustee shall provide timely notice of all such amendments to parties on the service list, including the United States Trustee.]

[66]{20.}[67][23.] The automatic stay imposed by Section 362 of the Bankruptcy Code is hereby modified with respect to LaSalle Bank to the extent necessary to effectuate the provisions of this [68]{Interim}[69][Final] Order.

[70]{21.}[71][24.] This [72]{Interim}[73][Final] Order shall not constitute a waiver by LaSalle Bank of any of its rights under the Loan Agreement, the Bankruptcy Code, or other applicable law, including, without limitation, its right to assert in the future that, notwithstanding the terms and provisions of this [74]{Interim}[75][Final] Order, any of its interests in the pre- or postpetition collateral lack adequate protection within the meaning of Sections 362(d) or 363(e) of the Bankruptcy Code.

[76]{22.}[77][25.]LaSalle Bank's failure, at any time or times hereafter, to require strict performance by the Trustee (or any successor to the Trustee) of any provision of this [78]{Interim}[79][Final] Order shall not waive, affect, or diminish any right of LaSalle Bank thereafter to demand strict compliance and performance herewith. No delay on the part of LaSalle Bank in the exercise of any right or remedy shall constitute a waiver of any other right or remedy.

[80][26.  By accepting the Budget attached to this Final Order as submitted to it by the Trustee and by taking any other actions pursuant to this Final Order, LaSalle Bank shall not be (a) deemed to be in control of the Trustee, the operations of the Debtor, or the operation of the Debtor's business or (b) deemed to be acting as a "responsible person" with respect to the Trustee or the operation or management of the Debtor or the operation of the Debtor's business.]

[81]{23.  Upon entry of a}[82][27._____This] Final[83]{ Order, this Interim} Order shall be

binding on all parties in interest in this bankruptcy case and their respective successors and

assigns, including, without limitation, any trustee, except that any successor trustee shall have

the right to terminate this [84]{Interim}[85][Final] Order after notice and a hearing.  If a successor

trustee terminates this [86]{Interim}[87][Final] Order or if any or all of the provisions of this

[88]{Interim}[89][Final] Order are hereafter modified, vacated, or stayed by subsequent order, such

action shall not affect the priority, validity, enforceability, or effectiveness of any lien, security

interest, priority, or other benefit authorized hereby prior to the effective date of such subsequent

order, and all such liens, security interests, priorities, and other benefits shall be governed in all

respects by the original provisions of this [90]{Interim}[91][Final] Order.

[92]{24.}[93][28.]  Except as otherwise explicitly set forth in this [94]{Interim}[95][Final] Order,

no third parties are intended to be or shall be deemed to be third party beneficiaries of this

[96]{Interim}[97][Final] Order.

[98]{25.}[99][29.]  The ten day stay of effectiveness of this [100]{Interim}[101][Final] Order under

Fed. R. Bankr. P. 4001(a)(3) is waived.

[102]{26. The Motion shall be entered and continued for a hearing before this Court on

entry of the Final Order on May 18, 2004 at 10:30 a.m.}
Dated: [103]{April}[104][May   ]____, 2004

SO ORDERED:

_____

UNITED STATES BANKRUPTCY JUDGE
[105][

]

**APPROVED AS TO FORM AND SUBSTANCE:**

HORACE FOX, TRUSTEE

_____

LASALLE BANK NATIONAL ASSOCIATION


By:    _____
       One of Its Attorneys

Susan Barnes de Resendiz
Mark S. Melickian
Jason J. Goitia
**GARDNER CARTON & DOUGLAS LLP**
191 North Wacker Drive, Ste. 3700
Chicago, IL  60606

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 02-B-05548 |
| | ) | |
| SAGE ENTERPRISES, INC., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Susan Pierson Sonderby |

### AGREED FINAL ORDER MODIFYING
### AUTOMATIC STAY TO PERMIT LASALLE BANK TO
### SET OFF MONEY IN THE BLOCKED ACCOUNT
### AND DIRECTING TRUSTEE TO TURN OVER CASH COLLATERAL
### AND  AUTHORIZING TRUSTEE'S LIMITED USE OF CASH COLLATERAL

LaSalle Bank National Association ("LaSalle Bank") having brought the

Unopposed Motion of LaSalle Bank National Association  for Limited Modification of the

Automatic Stay to Set off Money in the Blocked Account and for an Interim Order Directing the

Trustee to Turn Over Cash Collateral and Permitting the Trustee's Limited Use of Cash

Collateral (the "Motion"); and hearings having been held on such Motion on April 28, 2004 and

April 29, 2004, resulting in the entry on April 29, 2004, of the Agreed Interim Order Modifying

Automatic Stay to Permit LaSalle Bank to Set Off Money in the Blocked Account and Directing

Trustee to Turn Over Cash Collateral and Authorizing Trustee's Limited Use of Cash Collateral

(the "Interim Order"); and LaSalle being willing to continue to allow the Trustee to use Cash

Collateral only upon the terms and conditions set forth in the Loan Agreement[1] and as set forth

herein; and it appearing that entry of this order is in the best interests of the estate and that good

and sufficient cause exists to enter this order; and the Court being otherwise fully advised;

---

[1] Words used herein, whether capitalized or not, shall be construed in accordance with the definitions provided and set forth in the Motion and the Amended and Restated Loan and Security Agreement (the "Loan Agreement"), dated July 22, 1996, as supplemented by the definitions set forth in the Bankruptcy Code, including, without limitation, the definitions contained in Section 101 of the Bankruptcy Code.

IT IS ORDERED AS FOLLOWS:

1.      The Trustee and LaSalle Bank hereby consent and stipulate to the entry of this order (the "Final Order").

2.      For purposes of this Final Order, the term "Cash Collateral" shall mean and include all cash collateral as defined by Section 363(a) of the Bankruptcy Code in which LaSalle Bank holds valid and perfected first priority liens and security interests, including, but not limited to, the collateral and cash arising from the collection or other conversion of such collateral or cash to other assets of the Debtor's estate whether such liens or security interests existed on  the Involuntary Petition Date or arise thereafter pursuant to the terms of this Final Order and whether such assets that have been converted to cash existed as of the Involuntary Petition Date or arose or were generated thereafter.

3.      Except to the extent provided to the contrary herein, the terms and conditions of the Loan Agreement are incorporated herein and made a part hereof by this reference and hereafter shall be deemed and held to be enforceable against the Debtor.

4.      Without prejudice of the rights of any third party to object to the validity, extent, priority and/or enforceability of any lien held by LaSalle Bank, the Trustee and LaSalle Bank hereby stipulate and represent to the Court that, except to the extent provided to the contrary herein: (a) the Loan Agreement evidences and governs the debt owed as of the Involuntary Petition Date to LaSalle Bank, including principal and interest accrued on the prepetition indebtedness and the fees, costs, and expenses of the counsel to LaSalle Bank (the "Prepetition Debt"); (b) as of the Involuntary Petition Date, the Debtor is liable to pay the Prepetition Debt, and the Prepetition Debt shall be an Allowed Claim in an amount not less than $3,686,956.43;

(c) the Prepetition Debt constitutes the legal, valid, and biding obligations of the Debtor, enforceable in accordance with the terms of the Loan Agreement; (d) no offsets, defenses, or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the prepetition liens, among other things, secure payment of all of the Prepetition Debt and postpetition interest; and (f) the prepetition liens are valid, enforceable, duly perfected, first-priority liens upon and security interests in the Collateral.

5.     All agreements, security interests, mortgages, and liens contemplated by this Final Order are effective and perfected without further filing by LaSalle Bank or compliance with state or federal law.  LaSalle Bank will not be required to file financing statements or other documents in any jurisdiction or to take any other action in order to perfect the security interests and liens granted to it under and pursuant to this Final Order.

6.     Notwithstanding anything in this Final Order to the contrary, this Final Order is entered without prejudice to the rights, remedies and priorities, if any, held by third parties under the Agricultural Commodities Act of 1930 as amended [7 U.S.C. § 499 *et seq.*] ("PACA"), the Packers and Stockyard Act of 1921 [7 U.S.C. §§ 181-229] ("Stockyard"), or the reclamation rights, if any, of third parties pursuant to Commercial Code Section 2702 and/or any other applicable state or common law rights to the extent such rights are superior or senior to the lien asserted by LaSalle Bank.

7.     Subject to the limitations in Section 6, the automatic stay imposed by 11 U.S.C. § 362 is modified to allow LaSalle Bank to set off $555,121.08 held in the Blocked Account (defined below) against LaSalle Bank's claim of not less than $3,686,956.43 against Sage Enterprises, Inc. (the "Debtor").

8.     The Trustee is hereby authorized to use Cash Collateral, in an aggregate amount not to exceed $100,000, in accordance with the Budget appended hereto as Exhibit A and made a part of this Final Order, pursuant to the terms and conditions set forth herein and solely to the extent the Trustee chooses to use Cash Collateral hereunder.  The Cash Collateral used by the Trustee pursuant to this Final Order shall be used only for the purposes and up to the amounts listed in such Budget unless LaSalle gives its prior written consent; provided further that the Trustee's use of Cash Collateral is conditioned on the Trustee's timely collection of the Debtor's accounts and, unless LaSalle's provides prior written consent, the amount used for any line item in the Budget does not exceed 5% of the amount shown in the Budget.

9.     The Trustee agrees, and is hereby ordered and directed, to maintain the Blocked Account (provided that the Trustee uses such account solely for deposits and not for payment of creditors other than LaSalle Bank) and pay all proceeds of LaSalle's Bank's collateral into the Blocked Account.  Immediately upon entry of this Final Order, the Trustee shall account to LaSalle Bank for all cash, checks, notes, drafts, instruments, acceptances, or other property representing cash or other proceeds of the pre- and postpetition collateral in the Trustee's possession or control.  LaSalle Bank is authorized to apply the funds deposited into the Blocked Account to the indebtedness due from the Debtor to LaSalle Bank.  The Trustee shall establish and maintain the bank account for the Debtor's chapter 7 estate as LaSalle Bank.

10.     Pursuant to Sections 361(3) and 507(b) of the Bankruptcy Code, LaSalle Bank is granted additional adequate protection for the Trustee's use of Cash Collateral as provided for herein in the form of an allowed claim that shall have priority over all administrative expenses incurred in this Chapter 7 case of the kind specified in Sections 503(b) or 507(a) of the Bankruptcy Code.  As partial adequate protection for the Secured Lenders' interest in the Cash

-4-

Collateral, and to the extent, if any, that the liens granted in this paragraph are not encompassed

within any liens granted pursuant to the Loan Agreement, LaSalle Bank is hereby granted,

pursuant to 11 U.S.C. §§ 363(e) and 552(b), security interests in and liens upon all property of

the Debtor, including the collateral described in the Loan Agreement, which are acquired or

created by the Debtor or any trustee after the commencement of this case through the use of Cash

Collateral (the "Replacement Liens"). The Replacement Liens are valid, attached, choate,

enforceable, perfected, and continuing to the same extent as the existing respective liens of

LaSalle Bank

    11.    Except as otherwise agreed by LaSalle Bank in writing, the surcharge provisions

of Section 506(c) of the Bankruptcy Code and the enhancement of collateral provisions of

Section 552 of the Bankruptcy Code shall not be imposed on LaSalle Bank or any property that

is subject to a prepetition or postpetition lien in favor of LaSalle Bank for the benefit of any party

in interest in the case.

    12.    All funds constituting Cash Collateral in the possession, custody, or control of the

Debtor as of the Involuntary Petition Date are to be turned over to LaSalle Bank immediately

upon entry of this Final Order. LaSalle Bank is authorized to apply the funds to the indebtedness

due from the Debtor to LaSalle Bank.

    13.    LaSalle Bank shall have reasonable access, during regular business hours and

after reasonable notice, to the business premises in order to inspect financial records and to

review and evaluate the physical condition of the inventory.

    14.    The Trustee shall strictly account for all proceeds, products, or profits that come

into the Debtor's or the Trustee's possession, custody, or control and shall furnish LaSalle Bank

with such reports on a weekly basis. The Trustee shall keep records which shall be of such

character as will enable LaSalle Bank to determine at any time the status of the cash collateral together with the outstanding inventory and accounts receivable.

15.     The following shall be Events of Default under this Final Order: (a) the use of Cash Collateral other than as allowed in the Budget attached to this Final Order; (b) if LaSalle Bank reasonably believes that there is insufficient Collateral or proceeds of Collateral to pay the secured obligations in full or otherwise deems itself insecure; and (c) dismissal of the above-captioned case.

16.     Upon the occurrence of an Event of Default, LaSalle Bank may elect to notify the Trustee that he is no longer permitted to use Cash Collateral under this Final Order (the "Notice of Default"). Upon the Trustee's receipt of the Notice of Default, and without further order of this Court, the Trustee's right to use Cash Collateral shall terminate on the second business day after the Trustee's receipt of the Notice of Default. Beginning on the second business date following the Trustee's receipt of the Notice of Default from LaSalle Bank, LaSalle Bank, in its sole and absolute discretion, may return checks presented against the Trustee's accounts and not permit any withdrawals without further order by this Court.

19.     The Trustee's authority to use Cash Collateral pursuant to this Final Order shall terminate (the "Termination Date") upon an election by LaSalle Bank pursuant to paragraph 16, mutual agreement of the parties, the full satisfaction of LaSalle Bank's allowed claim, or an order of this Court.

20.     The Trustee acknowledges that his promises and actions contained herein are made of his own free will and volition. In accepting the Budget attached to this Final Order and the projections prepared by the Trustee and by taking any other actions pursuant to this Final Order, LaSalle Bank shall not have any liability to any third party. The Trustee acknowledges

that he has chosen, of his own free and voluntary acts, his own legal counsel, financial advisors, and accountants, if any.

21.    LaSalle Bank shall be permitted to recover the fees, costs, and expenses of its counsel in connection with the Loan Agreement to the extent permitted under Section 506(b) of the Bankruptcy Code.

22.    Nothing contained herein shall prohibit the Trustee and LaSalle Bank from amending the terms of the Trustee's use of Cash Collateral by mutual agreement without the necessity of obtaining Court approval, so long as such amendment does not alter the aggregate amount of the Cash Collateral used, security interests, or other adequate protection granted to LaSalle Bank herein or payments or deposits to be made hereunder or otherwise effect the statutory, common law, or other applicable rights, remedies, and priorities, if any, of third parties.  The Trustee shall provide timely notice of all such amendments to parties on the service list, including the United States Trustee.

23.    The automatic stay imposed by Section 362 of the Bankruptcy Code is hereby modified with respect to LaSalle Bank to the extent necessary to effectuate the provisions of this Final Order.

24.    This Final Order shall not constitute a waiver by LaSalle Bank of any of its rights under the Loan Agreement, the Bankruptcy Code, or other applicable law, including, without limitation, its right to assert in the future that, notwithstanding the terms and provisions of this Final Order, any of its interests in the pre- or postpetition collateral lack adequate protection within the meaning of Sections 362(d) or 363(e) of the Bankruptcy Code.

25.    LaSalle Bank's failure, at any time or times hereafter, to require strict performance by the Trustee (or any successor to the Trustee) of any provision of this Final Order

-7-

shall not waive, affect, or diminish any right of LaSalle Bank thereafter to demand strict
compliance and performance herewith. No delay on the part of LaSalle Bank in the exercise of
any right or remedy shall constitute a waiver of any other right or remedy.

26.    By accepting the Budget attached to this Final Order as submitted to it by the
Trustee and by taking any other actions pursuant to this Final Order, LaSalle Bank shall not be
(a) deemed to be in control of the Trustee, the operations of the Debtor, or the operation of the
Debtor's business or (b) deemed to be acting as a "responsible person" with respect to the
Trustee or the operation or management of the Debtor or the operation of the Debtor's business.

27.    This Final Order shall be binding on all parties in interest in this bankruptcy case
and their respective successors and assigns, including, without limitation, any trustee, except that
any successor trustee shall have the right to terminate this Final Order after notice and a hearing.
If a successor trustee terminates this Final Order or if any or all of the provisions of this Final
Order are hereafter modified, vacated, or stayed by subsequent order, such action shall not affect
the priority, validity, enforceability, or effectiveness of any lien, security interest, priority, or
other benefit authorized hereby prior to the effective date of such subsequent order, and all such
liens, security interests, priorities, and other benefits shall be governed in all respects by the
original provisions of this Final Order.

28.    Except as otherwise explicitly set forth in this Final Order, no third parties are

intended to be or shall be deemed to be third party beneficiaries of this Final Order.

29.    The ten day stay of effectiveness of this Final Order under Fed. R. Bankr. P.

4001(a)(3) is waived.

Dated: May ____, 2004

SO ORDERED:

_____

UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM AND SUBSTANCE:**

HORACE FOX, TRUSTEE

_____

LASALLE BANK NATIONAL ASSOCIATION

By:    _____
       One of Its Attorneys

Susan Barnes de Resendiz (# 90785380)
Mark S. Melickian (# 6229843)
Jason J. Goitia (# 90785765)
**GARDNER CARTON & DOUGLAS LLP**
191 North Wacker Drive, Ste. 3700
Chicago, IL  60606